UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, | No.  04-10457 |
| Plaintiff - Appellant, | D.C. No.  CR-01-00099-4-JCC |
| v. | |
| LYNDA L. TRANSFIGURACION, | **JUDGMENT** |
| Defendant - Appellee. | |

| | |
|---|---|
| UNITED STATES OF AMERICA, | No.  04-10458 |
| Plaintiff - Appellant, | D.C. No.  CR-01-00099-2-JCC |
| v. | |
| THUY DAO, | **JUDGMENT** |
| Defendant - Appellee. | |

Appeal from the United States District Court for the District Of Guam (Hagatna).

This cause came on to be heard on the Transcript of the Record from the United States District Court for the District Of Guam (Hagatna) and was duly submitted.

On consideration whereof, it is now here ordered and adjudged by this Court, that the judgment of the said District Court in this cause be, and hereby is **AFFIRMED**.

Filed and entered 04/05/06

A TRUE COPY
CATHY A. CATTERSON
CLERK OF COURT
ATTEST

JUN 0 8 2006

by:_____
Deputy Clerk

FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
_Plaintiff-Appellant,_

v.

LYNDA L. TRANSFIGURACION,
_Defendant-Appellee._

No. 04-10457

D.C. No.
CR-01-00099-4-JCC

UNITED STATES OF AMERICA,
_Plaintiff-Appellant,_

v.

THUY DAO,
_Defendant-Appellee._

No. 04-10458

D.C. No.
CR-01-00099-2-JCC

OPINION

Appeal from the United States District Court
for the District of Guam
John C. Coughenour, Chief Judge, Presiding

Argued and Submitted
September 16, 2005—San Francisco, California

Filed April 5, 2006

Before: Betty B. Fletcher, John R. Gibson,* and
Marsha S. Berzon, Circuit Judges.

Opinion by Judge Berzon;
Dissent by Judge Gibson

*The Honorable John R. Gibson, Senior United States Circuit Judge for
the Eighth Circuit, sitting by designation.

3801

## SUMMARY

### Criminal Law and Procedure/Pleas

The court of appeals affirmed a judgment of the district court. The court held that the government could not rescind defendants' plea agreements on the premise that all the parties mistakenly thought the defendants were pleading guilty to the crime of importation, where the offenses were held to not constitute crimes after the pleas but before sentencing.

Appellees Lynda Transfiguracion and Thuy Dao, among others, were charged in district court in Guam with various offenses associated with a conspiracy to smuggle narcotics from California to Guam. Transfiguracion and Dao agreed, pursuant to plea agreements, to waive indictment and plead guilty to an information charging them with importing methamphetamine hydrochloride into the United States from a place outside thereof in violation of 18 U.S.C. § 2 and 21 U.S.C. §§ 952(a) and 960. Transfiguracion and Dao also agreed to cooperate with the government in its investigation of the drug trafficking conspiracy and in the prosecution of their co-conspirators. In exchange for their guilty pleas and cooperation, the government agreed not to prosecute Transfiguracion and Dao for "any other non-violent offenses." The agreements also provided that the government would dismiss the conspiracy charges contained in the multi-count indictment "upon sentencing." Sentencing was postponed to allow Transfiguracion and Dao time to provide the required cooperation and to allow the government time to evaluate the assistance. Then the Ninth Circuit decided *United States v. Cabaccang*, 332 F.3d 622 (9th Cir. 2003) (en banc), holding that the smuggling of drugs from California to Guam did not constitute the crime of importation of a controlled substance "into the United States from any place outside thereof." In light of *Cabaccang*, both Transfiguracion and Dao moved to dismiss the importation informations and conspiracy indict-

ments filed against them. The district court granted the motions.

The government appealed, contending, based on the doctrine of mutual mistake of law, that it was entitled to rescind the plea agreement. The government also argued that it could continue to prosecute Transfiguracion and Dao on the underlying indictment by virtue of paragraph 11 of the plea agreements, which stated that if the defendant's guilty plea is rejected, withdrawn, vacated, or reversed at any time, the United States will be free to prosecute the defendant for all charges of which it then has knowledge.

[1] Because a plea agreement is, at bottom, a contract between the government and a criminal defendant, for the most part courts construe a plea agreement using the ordinary rules of contract interpretation. [2] One tenet of contract law courts have steadfastly applied to plea agreements is that of *contra proferentem*, the principle that ambiguities in contracts are to be construed unfavorably to the drafter. In context of plea agreements, the government is usually the drafter and must ordinarily bear the responsibility for any lack of clarity. Ambiguities are therefore construed in favor of the defendant. As a defendant's liberty is at stake, the government is ordinarily held to the literal terms of the plea agreement it made.

[3] The Ninth Circuit has held that a defendant's motion to set aside his conviction and sentence pursuant to 28 U.S.C. § 2255 had done nothing to breach nor to repudiate his plea agreement, and accordingly, the agreement remained in force. The defendant had pleaded guilty to the offense of possession of a firearm, and, three years after he was sentenced, the Supreme Court handed down its opinion that overruled the Ninth Circuit's prior understanding that the offense required mere possession. Because the plea agreement was not at issue, and also because the defendant could never be returned to his original position, the court of appeals rejected the government's argument that the agreement should be rescinded

because there had been a mutual mistake of law. **[4]** The Ninth Circuit concluded that it would be inappropriate to extend the application of ordinary contract law principles so far as to permit the government to claim the defense of mutual mistake. **[5]** The inability to rescind a plea agreement based on a mutual mistake of law applies to criminal defendants as well as to the government. **[6]** The nature of a plea agreement is simply too complex to support the doctrine of mutual mistake. With the liberty of Transfiguracion and Dao at stake and their cooperation having already occurred, the court of appeals could not allow the government to rescind their plea agreements on the premise that all the parties mistakenly thought the defendants were pleading guilty to the crime of importation.

**[7]** Paragraph 11 of Transfiguracion and Dao's plea agreements allowed prosecution on the conspiracy offenses to proceed only in one of four circumstances: where the defendant's plea is rejected, withdrawn, vacated, or reversed. It had to be concluded that no such circumstance obtained here. **[8]** The Ninth Circuit has held that a claim that a conviction is invalid because the underlying acts do not constitute a crime did not attack the plea agreement in any way, including by invalidating the guilty plea entered pursuant to the agreement. **[9]** Transfiguracion and Dao moved to dismiss the importation informations in the district court because those charges no longer alleged crimes. Their plea agreements did not prohibit them from moving to dismiss the importation charges based on the *Cabaccang* decision. **[10]** As Transfiguracion and Dao's actions were permitted under the terms of their contracts with the government, their motions to dismiss the informations were not motions to repudiate their agreements, or attempts to reject or vacate their pleas. **[11]** Their actions were not barred by the agreements' literal terms, so the agreements remained in force.

**[12]** The failure of the sentencing condition for dismissing the indictment did not permit the government to proceed to

prosecute Transfiguracion and Dao under it. **[13]** First, the plea agreements remained binding, as Transfiguracion and Dao did not breach them in any way. **[14]** Second, although the agreements provided that the government might be absolved of its obligation to move to dismiss the conspiracy charges upon sentencing, that provision spoke only to the timetable according to which the indictment is to be dismissed if matters proceed as planned. It did not address whether the prosecution of those charges remains viable if sentencing never occurs. **[15]** The meaning of the phrase "other non-violent offenses" meant that, provided that Transfiguracion and Dao cooperated, the government could not prosecute them for any known crimes other than those crimes for which they agreed to plead guilty, namely, the importation charges. **[16]** It had to be held that this phrase should be read to refer to all non-violent offenses known to the government to which Transfiguracion and Dao did not plead guilty, including the conspiracy charges contained in the indictment. **[17]** Given that Transfiguracion and Dao both fulfilled their end of the bargain by cooperating with the government, they could not be prosecuted for any other non-violent offenses now known to the government. As a result, the prosecution of the conspiracy charges could not continue. The judgment of the district court had to be affirmed.

Judge Gibson dissented, writing that the government's obligation to dismiss does not ripen until Transfiguracion and Dao are meted out their punishment. Since that will never happen in this case, the government was not obliged to dismiss.

## COUNSEL

Leonardo M. Rapadas, United States Attorney, & Marivic P. David, Assistant United States Attorney, Hagåtña, Guam, for plaintiff-appellant United States of America.

William Gavras, Gorman & Gavras, P.C., Hagåtña, Guam, for defendant-appellee Lynda Transfiguracion.

Joaquin C. Arriola, Jr. & Jacqueline Taitano Terlaje, Arriola, Cowan & Arriola, Hagåtña, Guam for defendant-appellee Thuy Dao.

## OPINION

BERZON, Circuit Judge:

In this consolidated proceeding, we are called on to interpret and give effect to a less-than-precise plea agreement between the United States and two criminal defendants. The United States appeals from two decisions of the district court, which dismissed an indictment against both defendants on the grounds that the terms of their plea agreements prohibited the government from prosecuting them for the offenses covered by the indictment. We affirm.

## I.

On October 10, 2001 a federal grand jury sitting in the District of Guam returned a multi-count indictment in criminal case No. 01-00099, charging defendants Lynda Transfiguracion and Thuy Dao, among others, with various offenses associated with a conspiracy to smuggle narcotics from California to Guam between early 1997 and late 1998. Transfiguracion and Dao were both charged with conspiracy to import over 500 grams of methamphetamine hydrochloride "into the United States from a place outside thereof" in violation of 21 U.S.C. §§ 952(a), 960, and 963 and conspiracy to distribute over 500 grams of methamphetamine hydrochloride in violation of 21 U.S.C. §§ 841(a)(1) and 846. Dao was also charged with conspiracy to launder monetary instruments in violation of 18 U.S.C. §§ 2, 1956(a)(i)(B)(i), and 1956(h).

Following negotiations with the government, both defendants agreed, pursuant to plea agreements, to waive indictment and plead guilty to an information charging them with importing 100 grams of methamphetamine hydrochloride "into the United States from a place outside thereof" in violation of 18 U.S.C. § 2 and 21 U.S.C. §§ 952(a) and 960. Transfiguracion and Dao also agreed to cooperate with the government fully and truthfully in its investigation of the drug trafficking conspiracy and in the prosecution of their co-conspirators. In exchange for their guilty pleas and cooperation, the government agreed not to prosecute the defendants for "any other non-violent offenses." The agreement also provided that the government would dismiss the conspiracy charges contained in the multi-count indictment "upon sentencing." Because the exact language of the defendants' plea agreements is significant to the resolution of this case, we reproduce the relevant provisions of those agreements here:[1]

> 1. The defendant agrees to waive indictment pursuant to Rule 7(b) of the Federal Rules of Criminal Procedure, and enter a guilty plea to an Information charging her with importation of 100 grams net weight of methamphetamine also known as "ice," in violation of 21 U.S.C. §§ 952(a) and 960. The government will move to dismiss Counts I, VI and VIII of an indictment against her in CR# 01-00099 upon sentencing.[2]

---

[1]Although Transfiguracion and Dao executed separate plea agreements, the texts are substantially identical. We quote directly from Dao's agreement; the same language appears in Transfiguracion's agreement, unless noted otherwise.

[2]Count VIII refers to the conspiracy to launder monetary instruments charge, for which Dao, but not Transfiguracion, was indicted. Transfiguracion's plea agreement states that the government will move to dismiss only Counts I and VI, which correspond to the conspiracy to import and conspiracy to distribute offenses, respectively.

2. The defendant . . . further agrees to fully and truthfully cooperate with federal and local law enforcement agents concerning their investigation of the importation, possession, and distribution of controlled substances, and money laundering, and related unlawful activities, including the disposition of profits from and assets relating to such activities. She agrees to testify fully and truthfully before any grand juries and at any trials or proceedings against any other co-conspirators if called upon to do so for the United States, subject to prosecution for perjury for not testifying truthfully. The United States will make this cooperation known to the Court prior to the defendant's sentencing. The defendant further understands that she remains liable and subject to prosecution for any non-violent Federal or Territorial offenses that she does not fully advise the United States, or for any material omissions in this regard. In return for this cooperation, the United States agrees not to prosecute defendant in the District of Guam or the Northern Mariana Islands for any other non-violent offenses now known to the government or which she reveals to federal authorities.

* * *

6. If defendant provides full, truthful, and substantial assistance to investigating federal agencies, the government will move the Court, as provided by Section 5K1.1, United States Sentencing Guidelines, hereinafter USSG, and 18 U.S.C. Section 3553(e), for a downward departure from the Guidelines and the statutory minimum sentence. . . .

7. The defendant understands that to establish a violation of importation of 100 grams of methamphetamine, the government must prove each of the

following elements beyond a reasonable doubt:

*First*: defendant knowingly[3] brought 100 grams net weight of methamphetamine a/k/a "Ice" into the United States from a place outside thereof; and

*Second*: defendant knew it was methamphetamine a/k/a "Ice."

\* \* \*

9.   The defendant understands that this plea agreement depends on the fullness and truthfulness of her cooperation. Therefore, defendant understands and agrees that if she should fail to fulfill completely each and every one of her obligations under this plea agreement, or make material omissions or intentional misstatements or engage in criminal conduct after the entry of her plea agreement and before sentencing, the government will be free from its obligations under the plea agreement. Thus, defendant, in addition to standing guilty of the matters to which she has pled pursuant to this agreement, shall also be fully subject to criminal prosecution for other crimes, and for the counts which were to be dismissed. In any such prosecution, the prosecuting authorities, whether Federal, State, or Local, shall be free to use against her, without limitation, any and all information, in whatever form, that she has provided pursuant to this plea agreement or otherwise; defendant shall not assert any claim under the United States Constitution, any statute, Rule 11(e)(6) of the Federal Rules of Criminal Procedure, Rule 410 of the Federal Rules of Evidence, or any other provision of law, to attempt to bar such use of the information.

---

[3]Transfiguracion's plea agreement contains the word "intentionally" instead of "knowingly."

10. The defendant agrees to waive any right to appeal or to collaterally attack this conviction. The defendant reserves the right to appeal the sentence actually imposed in this case.

11. If defendant's guilty plea is rejected, withdrawn, vacated, or reversed at any time, the United States will be free to prosecute defendant for all charges of which it then has knowledge, and any charges that have been dismissed will be automatically reinstated or may be represented to a grand jury with jurisdiction over the matter. In such event, defendant waives any objections, motions, or defenses based upon the Statute of Limitations, Speedy Trial Act, or constitutional restrictions as to the time of the bringing of such charges.

As agreed, both defendants, in June, 2002, waived indictment and pleaded guilty to the importation charges. Their cases were set for status hearings. Sentencing in both cases was postponed to allow the defendants time to provide the required cooperation and to allow the government time to evaluate the assistance. Transfiguracion and Dao were released on certain conditions and permitted to return to California during the interim.[4] By all accounts, the defendants fully cooperated, as required.

Then this court threw a wrench in the works: On June 6, 2003, we decided *United States v. Cabaccang*, 332 F.3d 622 (9th Cir. 2003) (en banc), in which we held that the smuggling of drugs from California to Guam did not constitute the crime of importation of a controlled substance "into the United States from any place outside thereof," as defined in 21 U.S.C. § 952(a). We concluded that the text and structure

---

[4]After Transfiguracion missed several of her required drug tests and failed to appear for a hearing, a bench warrant was issued for her arrest. She was subsequently arrested and returned to Guam.

of the statute did not proscribe the transportation of drugs between two domestic locations within the United States, even if the travel included a flight through international airspace. *Id.* at 636. Our decision in *Cabaccang* meant that the facts that had formed the predicate of Transfiguracion's and Dao's contracted-for guilty pleas no longer constituted a crime.

In light of *Cabaccang*, both defendants moved to dismiss the importation informations filed against them. They did not seek to withdraw their guilty pleas to those charges. The defendants also moved to dismiss the indictment in criminal case No. 01-00099.

At the district court hearing on Dao's motions to dismiss, the government agreed that this court's decision in *Cabaccang* required the importation information to be dismissed, as there was no longer a factual basis to support the charges. The government, however, maintained that it could continue to prosecute Dao on the conspiracy charges covered by the multi-count indictment. The district court dismissed the importation information, holding that the charge could not stand in light of *Cabaccang* and that the case could not proceed to sentencing. The district court then ordered supplemental briefing on the motion to dismiss the outstanding indictment and set the matter for a status hearing.

After briefing, the district court held a joint hearing to address Transfiguracion's motion to dismiss the importation information as well as the conspiracy indictment and Dao's outstanding motion to dismiss the conspiracy indictment. As it had done in Dao's case, the government agreed that the importation information filed against Transfiguracion had to be dismissed. The government argued, however, that the parties' mutual mistake of law as to the factual basis of the importation charge justified rescission of the defendants' plea agreements. The government also contended that under the terms of the plea agreements, the conspiracy charges

remained viable against both Transfiguracion and Dao.[5] The defendants countered that because they had fully complied with their obligations under their plea agreements, including providing substantial cooperation to the government, the United States was prohibited from prosecuting them on the conspiracy charges contained in the indictment.

In two separate written orders, the district court granted both defendants' motions to dismiss the conspiracy indictment.[6] The court rejected the government's claim that the agreements could be rescinded under the doctrine of mutual mistake and held that because the defendants had complied with their agreements by cooperating with the government, the agreements precluded their prosecution for the conspiracy charges.

The United States timely appealed the district court's decisions to preclude the prosecution of Transfiguracion and Dao on the conspiracy indictment.[7] This court subsequently granted the government's motion to consolidate the appeals.

## II.

As we have noted previously, *see United States v. Franco-Lopez*, 312 F.3d 984, 988 (9th Cir. 2002), there is a conflict in our case law concerning the proper standard to be applied to a district court's interpretation of a plea agreement. *Compare United States v. Floyd*, 1 F.3d 867, 869 (9th Cir. 1993) ("The district court's interpretation of a plea agreement is a finding of fact and is reviewed for clear error but its applica-

---

[5]We use the phrase "conspiracy charges" to refer generally to the counts charged against Transfiguracion and Dao in the indictment in criminal case No. 01-00099 — the offenses the government maintains it may continue to prosecute.

[6]The district court also dismissed the importation information filed against Transfiguracion, as it had done with regard to Dao.

[7]The United States has not sought review of the district court's rulings dismissing the importation informations.

tion of the legal principles is a question of law reviewed de novo." (citations omitted)), *with United States v. Salemo*, 81 F.3d 1453, 1460 (9th Cir. 1996) ("We review a district court's interpretation of the terms of a plea agreement *de novo*. We consider whether the facts demonstrate that there was a breach of a plea agreement under the more deferential clearly erroneous standard of review." (citations omitted)). We need not, however, resolve this conflict in this case. Even under the less deferential de novo standard of review, we conclude that the district court's interpretation of the plea agreements at issue was correct.[8] *See Franco-Lopez*, 312 F.3d at 988 (noting, but declining to resolve, the standard of review inconsistency regarding interpretation of plea agreements because "[w]hichever standard we apply, we reach the same conclusion").

Once a district court has interpreted a plea agreement, its decision to compel the government's specific performance of such an agreement — which is what the defendants sought in the district court — is reviewed for abuse of discretion. *United States v. Anthony*, 93 F.3d 614, 616 (9th Cir. 1996).

## III.

### A.

[1] Before turning to the specific question presented in this case, we review some of the governing principles that apply to the interpretation of a plea agreement. Because a plea agreement is, at bottom, a contract between the government and a criminal defendant, for the most part "we construe [a] plea agreement using the ordinary rules of contract interpretation." *See Brown v. Poole*, 337 F.3d 1155, 1159 (9th Cir.

---

[8]It appears that our dissenting colleague is applying a de novo standard of review in concluding that the district court's interpretation of the agreement should be reversed, as he provides no basis for declaring the district court's interpretation clearly erroneous.

2003). The analogy to contract law is, however, in certain circumstances imperfect, and we do not always follow it. *See United States v. Barron*, 172 F.3d 1153, 1158 (9th Cir. 1999) (en banc).

[2] One tenet of contract law we *have* steadfastly applied to plea agreements, of particular importance in this case, is that of *contra proferentem*, the principle that ambiguities in contracts "are to be construed unfavorably to the drafter." BLACK'S LAW DICTIONARY 328 (7th ed. 1999). In context of plea agreements, the government is usually the drafter and must ordinarily bear the "responsibility for any lack of clarity." *Franco-Lopez*, 312 F.3d at 989 (internal quotation marks omitted). Ambiguities are therefore construed "in favor of the defendant." *Id.* (internal quotation marks omitted); *see also United States v. De la Fuente*, 8 F.3d 1333, 1338 (9th Cir. 1993) ("Construing ambiguities in favor of the defendant makes sense in light of the parties' respective bargaining power and expertise."). As a defendant's liberty is at stake, the government is ordinarily held to the literal terms of the plea agreement it made, *United States v. Packwood*, 848 F.2d 1009, 1012 (9th Cir. 1988), so that "[t]he government gets what it bargains for but nothing more," *United States v. Pruitt*, 32 F.3d 431, 433 (9th Cir. 1994).

B.

With these principles in mind, we first address the government's contention, based on the doctrine of mutual mistake of law, that it is entitled to rescind the plea agreement. The claim is that because both the government and the defendants reasonably believed that the defendants' conduct constituted the crime of importation, neither party was bound by the plea agreement after our decision in *Cabaccang* proved that understanding incorrect.

[3] While the argument has some initial appeal, we rejected substantially the same mutual mistake argument in *Barron*.

172 F.3d at 1158-59. Barron pleaded guilty to the offense of possession of a firearm in relation to a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1). *Id.* at 1155. Three years after Barron was sentenced, the Supreme Court handed down its opinion in *Bailey v. United States*, 516 U.S. 137 (1995), which overruled this circuit's prior understanding that § 924(c)(1) required mere possession, *see United States v. Torres-Rodriguez*, 930 F.2d 1375, 1385 (9th Cir. 1991), and held that the offense instead requires "active employment" of the firearm. Barron thereupon moved to set aside his conviction and sentence pursuant to 28 U.S.C. § 2255, arguing that the Supreme Court's intervening decision in *Bailey*, 516 U.S. at 143, rendered his conviction invalid. *See Barron*, 172 F.3d at 1156. The district court agreed that Barron's conviction had to be vacated, but conditioned the vacatur on Barron's withdrawal of his plea agreement. *Id.* We reversed, holding that although Barron's conviction had to be set aside, his § 2255 motion had done nothing "to breach nor to repudiate the agreement," and accordingly, the agreement remained in force. *Id.* at 1158. Because the "plea agreement [was] not at issue," and also because the defendant "can never be returned to his 'original position,' " we rejected the government's argument that the agreement should be rescinded because there had been a mutual mistake of law.[9] *Id.*

**[4]** *Barron* recognizes that our typical practice of construing plea agreements according to traditional principles of contract law would suggest that a mutual mistake of law *could* invalidate the bargain struck by the defendant and the government in a plea agreement. Nevertheless, we concluded that it would be inappropriate to extend the application of ordinary contract law principles so far as to permit the government to claim the defense of mutual mistake. We observed:

---

[9]As discussed later, Transfiguracion and Dao cannot be restored to their original positions because they cooperated with the government in reliance on their plea agreements, providing information pertinent to their prosecution on the additional conspiracy charges contained in the indictment.

> A plea bargain is not a commercial exchange. It is an instrument for the enforcement of the criminal law. What is at stake for the defendant is his liberty. . . . What is at stake for the government is its interest in securing just punishment for violation of the law and its interest that an innocent act not be punished at all. The interests at stake and the judicial context in which they are weighed require that something more than contract law be applied.

*Id.*

[5] The inability to rescind a plea agreement based on a mutual mistake of law applies to criminal defendants as well as to the government. In *United States v. Zweber*, we rejected the argument of two criminal defendants who claimed they were entitled to withdraw their guilty pleas because both they and the government believed when entering the agreement that a sentencing reduction would be legally appropriate. 913 F.2d 705, 711 (9th Cir. 1990), *superseded by amendment*, U.S.S.G. app. C, amend. 345, *as recognized in United States v. Webster*, 996 F.2d 209, 211 (9th Cir. 1993). In *Zweber*, the defendants pleaded guilty to drug charges pursuant to a plea agreement with the government. *Id.* at 707. As part of that agreement, the government agreed to recommend a sentencing reduction for playing a minor role in the offense, as the defendants were alleged to be minor players in a massive cocaine distribution network. *Id.* Because the charge to which the defendants pleaded guilty was a distribution offense in which they were the predominate actors, however, the district court ruled that it would be inappropriate to grant the reduction, as any such reduction must be based on their roles in the offense of conviction, not in otherwise extraneous conspiracy conduct. *Id.* We affirmed this view, and also concluded that the mutual misunderstanding of the parties as to the appropriateness of such a reduction did not permit the defendants to withdraw their guilty pleas.[10] *Id.* at 708-09, 711. We observed

---

[10]The United States Sentencing Commission amended the Sentencing Guidelines to clarify that a determination of the defendant's role in an

that "[i]t is unfortunate that the government and defense coun-
sel both erred, but defense counsel are not entitled to rely on
the government's good faith misunderstanding of the law as
a basis for relief. Analogies to contract law in this setting are
not perfect." *Id.* at 711.

[6] We see no basis for reaching a different conclusion on
the mutual mistake issue here than we did in *Barron* and *Zwe-
ber.* The nature of a plea agreement is simply too complex to
support the doctrine of mutual mistake.[11] With the liberty of
Transfiguracion and Dao at stake and their cooperation having
already occurred, we cannot allow the government to rescind
their plea agreements on the premise that all the parties mis-
takenly thought the defendants were pleading guilty to the
crime of importation. As we stated in *Zweber,* "[i]t is unfortu-
nate that the government and defense counsel both erred," *id.,*
but that error cannot void an otherwise valid plea agreement.

offense is to be based on all relevant conduct, and not simply those acts
associated with the crime of conviction. *See* U.S.S.G. app. C, amend. 345;
U.S.S.G. ch.3, pt. B, introductory cmt. The substantive ruling in *Zweber*
is thus no longer good law, but the ruling concerning the continued bind-
ing effect of the plea agreement is.

[11]This conclusion is buttressed by our recent decision on a slightly dif-
ferent point in *United States v. Cardenas,* 405 F.3d 1046 (9th Cir. 2005),
in which we concluded that a criminal defendant's waiver of the right to
appeal contained in a plea agreement was not rendered invalid by the sub-
sequent decision of *United States v. Booker,* 125 S. Ct. 738 (2005). Fol-
lowing the Supreme Court's watershed ruling in *Booker,* we have been
inundated with appeals by criminal defendants claiming that their waivers
were involuntary and unknowing because of the erroneous understanding,
shared by defendants and the government alike, that the Sentencing
Guidelines were mandatory. As we explained in *Cardenas,* that mistake
does not justify invalidating the waiver of a right to appeal because "a
change in the law does not make a plea involuntary and unknowing." 405
F.3d at 1048.

## C.

[7] The government next contends that it may continue to prosecute Transfiguracion and Dao on the underlying indictment by virtue of paragraph eleven of the plea agreements. That provision states that "[i]f defendant's guilty plea is rejected, withdrawn, vacated, or reversed at any time, the United States will be free to prosecute defendant for all charges of which it then has knowledge." We disagree. That paragraph allows prosecution on the conspiracy offenses to proceed only in one of four circumstances: Where defendant's plea is "rejected, withdrawn, vacated, or reversed." An examination of our prior case law leads us to the conclusion that no such circumstance obtained here.[12]

[8] *Barron* held that a claim that a conviction is invalid because the underlying acts do not constitute a crime "did not attack the plea agreement in any way," including by invalidating the guilty plea entered pursuant to the agreement. *Barron*, 172 F.3d at 1158. As we observed in *Barron*, "[a]s a practical matter, the guilty plea to criminal acts can remain in force even as the sentence imposed upon an innocent act is set aside." *Id.* As the sentence just quoted indicates, *Barron* did not view the *plea* as "set aside" or vacated, but only the sentence entered upon it. *See also id.* at 1159 (characterizing the defendant's motion as one to "vacate his *conviction*" (emphasis added)); *id.* (referring to the "*conviction*" as "void" (emphasis added)).[13]

---

[12]Although we find the language of paragraph eleven clear and unambiguous, were there any question as to whether this clause supported the government's argument, we would, for the reasons discussed earlier, resolve the ambiguity in favor of the defendants under the *contra proferentem* doctrine.

[13]As the language quoted in the text indicates, *Barron* did not draw the nice distinction between the plea agreement and the plea that the dissent posits. Part of the plea agreement both in that case and in this one was the agreement to plead guilty. Without an intact plea to all charges, the plea agreement would have been voided.

*Barron* was not the first case to draw a distinction between vacating a guilty plea and voiding a conviction or sentence. *United States v. Sandoval-Lopez* concerned plea agreements that did not explicitly prohibit the defendants from moving to vacate their convictions rendered void by a change in the substantive law. 122 F.3d 797, 800-01 (9th Cir. 1997). The defendants made such motions but did not "claim[ ] that their pleas were not 'knowing' or 'voluntary' or were otherwise defective." *Id.* at 802. We held that only if there had been such claims could the court have "vacate[d] or allow[ed] withdrawal of the guilty pleas and reinstate[d] the dismissed charges." *Id.*

*Sandoval-Lopez*, like *Barron*, concerned firearms convictions rendered void as a matter of law by *Bailey*. When the defendants filed motions collaterally attacking their convictions under § 2255, *id.* at 799, the government contended that the defendants' actions were a breach of their agreements and that the government could prosecute the defendants on charges dismissed pursuant to the plea bargains. *Id.* at 800. We held that, by challenging their convictions, the defendants did not invalidate their agreements or their pleas. *Id.* at 802. Rather, the defendants' motions sought only to void their *convictions*, not their guilty pleas or plea agreements:

> The defendants did not attack their plea agreements . . . . Instead, they claimed in their § 2255 motions that, while their plea bargains were knowing, voluntary, and in all other respects proper when made and accepted by the district court, the conduct to which they pled guilty — the only conduct for which they were convicted and sentenced — is now insufficient as a matter of law to support their convictions. They did not recant their admissions to having committed the acts that formed the basis for the counts of conviction; they simply claimed, correctly, that after *Bailey* those acts were no longer crimes.

*Id.* Accordingly, with the plea agreement still in force, the government was precluded from reinstating the counts that had been dismissed pursuant to the agreement. *Id.*

[9] Similar circumstances exist in this case: Transfiguracion and Dao have not recanted their admissions to the actions alleged in the informations. Nor have they violated the provisions of their agreements precluding appeal or collateral attack on their convictions. Instead, they moved to dismiss the importation informations in the district court because those charges no longer alleged crimes. Just as "[a] plea agreement does not waive the right to bring a § 2255 motion unless it does so expressly," *Pruitt,* 32 F.3d at 433, the plea agreements in this case did not prohibit Transfiguracion and Dao from moving to dismiss the importation charges based on the *Cabaccang* decision. Moreover, the defendants in this case sought to *enforce* the plea agreements' prohibition on prosecuting them for other crimes once they cooperated; they did not act to reject, withdraw, vacate, or reverse the pleas required by the agreements.[14]

[10] As the defendants' actions were permitted under the terms of their contracts with the government, their motions to dismiss the informations were not motions to repudiate their agreements, nor attempts to reject or vacate their pleas. We cannot take a blue pencil to the contract to add "dismissal of the information" to the express terms contained in paragraph eleven.

We note that it was the government, as the drafter of the contract, that failed adequately to protect itself from a subsequent change in the law. We stated in quite plain terms in

---

[14]The dissent claims that *Barron* is inapplicable because the government is attempting to enforce the plea agreement. As the dissent recognizes, however, the government's lead contention on appeal is that it is entitled to rescind the defendants' plea agreements based on a mutual mistake of law.

*Barron* that "[t]he drafter of the plea agreement could have anticipated the contingency that has arisen and included a provision protecting the government's interest in the event that Barron's conviction was vacated; that the government did not do so does not justify rescission of the agreement." 172 F.3d at 1161. Similarly, in *Sandoval-Lopez*, we noted that absent a clause prohibiting the defendants from moving to vacate their convictions, "the prosecution bore the risk that a change in the relevant substantive law would afford the defendants the right to be released." 122 F.3d at 801. The provision in paragraph eleven regarding "reject[ing], withdraw[ing], vacat[ing], or revers[ing]" the defendants' pleas does not address that risk.

It is the government, not an individual criminal defendant, who is the repeat player in the plea bargaining process. Because all plea agreements are negotiated against the backdrop that the law can change by way of judicial interpretation, the prosecution "knew or should have known that comparable changes in the law occur from time to time." *Id.* The failure of the United States to specify that it could continue to prosecute the defendants in the event that the importation informations were dismissed due to a development in the substantive law (or for any other reason) is thus a failure to cover a predictable contingency. Under the canon of *expressio unius est exclusio alterius*, the absence of any provision covering that contingency when others are covered indicates that prosecution for the conspiracy charges if the informations were dismissed was not part of the bargain struck by the parties.[15]

---

[15]We note that the government has apparently devised language designed to guard against a similar result in subsequent cases. The district court took judicial notice of the fact that:

> the U.S. Attorney has since drafted plea agreements including language addressing the possibility that in the event there is a change in law and the defendant cannot proceed to sentencing for the agreed upon offense the defendant will agree to plead guilty to another charge encompassing the same or similar conduct.

[11] In sum, we are charged with enforcing the literal terms of a plea agreement, *Packwood*, 848 F.2d at 1012. The defendants' actions were not barred by the agreements' literal terms, so the agreements remain in force. It is to construing the specific terms of those agreements that we now turn.

## D.

That task is easier said than done. Three paragraphs in the plea agreements have something to say about the fate of the conspiracy charges.

Paragraph one of the plea agreements directly refers to the indictment in criminal case No. 01-00099 and provides that the government "will move to dismiss" the conspiracy counts in the indictment "upon sentencing" of the defendants for the importation offense. Paragraph two states that in return for the cooperation tendered by the defendants, the United States will not prosecute them "for any other non-violent offenses now known to the government or which [they] reveal[ ] to federal authorities." Finally, paragraph nine provides that if the defendants fail to "fulfill completely each and every one of [their] obligations," they may be prosecuted for "other crimes, and for the counts which were to be dismissed."[16] The hiatus is that the agreement does not expressly contemplate the situation that occurred here, where the defendants have provided the required cooperation and yet will never be sentenced on the importation charges. Reading the three provisions together and applying the *contra proferentem* principle, however, we conclude that the agreements must be construed to preclude prosecution under those circumstances.

---

[16]Paragraph nine is not directly implicated in these circumstances because it is undisputed that both defendants fully complied with the agreements. Nonetheless, our interpretation takes into consideration the language of that provision, so as to reach a coherent understanding of the agreement as a whole.

As mentioned above, as a result of our decision in *Cabaccang*, the "sentencing" contemplated in paragraph one of the defendants' plea agreements never occurred and never will. The government's argument is that although dismissal of the importation informations was required because there was, after *Cabaccang*, no factual basis underlying the charges, the indictment need not be dismissed, because the government's obligation under the plea agreements to dismiss the indictment upon the sentencing of the defendants on the importation charges will never arise.[17]

**[12]** We may assume that the reasoning of both the government and the dissent is correct up to this point — that is, that the sentencing condition will never arise, so *that* basis for dismissing the indictment does not exist. For several reasons, however, the failure of the sentencing condition for dismissing the indictment does not permit the government to proceed to prosecute the defendants under it.

**[13]** First, the plea agreements remain binding, as the defendants did not breach them in any way. *See United States v. Aguilar-Muniz*, 156 F.3d 974, 978 (9th Cir. 1998) ("After a plea agreement has been accepted and entered by the court, the court may not rescind the plea agreement on the government's motion unless the defendant has breached the agreement."); *United States v. Partida-Parra*, 859 F.2d 629, 634 (9th Cir. 1988) ("We conclude that the district court erred by freeing the government from its obligation under the plea bargain in the absence of a breach by the defendant.").

**[14]** Second, although under paragraph one of the agreements the government may be absolved of its obligation to move to dismiss the conspiracy charges upon sentencing, that paragraph speaks only to the timetable according to which the

---

[17]As noted above, the government did not appeal the rulings of the district court dismissing the importation charges.

indictment is to be dismissed *if* matters proceed as planned.[18] Paragraph one does not address whether the prosecution of those charges remains viable if sentencing never occurs. That question is answered by other terms of the agreement, to which the government remains bound. Those terms, as we shall explain, forbid the prosecution of the defendants on the conspiracy charges as long as they fully cooperate with the government.[19]

[15] The meat and potatoes of the plea agreement is contained in the second paragraph. That section provides that, "in return for [the defendants'] cooperation, the United States agrees not to prosecute defendant[s] in the District of Guam or the Northern Mariana Islands for any other non-violent offenses now known to the government or which [they] reveal[ ] to federal authorities." Despite the government's argument to the contrary, the meaning of the phrase "other non-violent offenses" is not difficult to ascertain: Provided that the defendants cooperate, the government cannot prosecute them for any known crimes *other* than those crimes for which the defendants have agreed to plead guilty, namely, the importation charges.

---

[18]The point of providing that the conspiracy charges were to be dismissed at the time of sentencing, not earlier, was to hold out the possibility of proceeding on the charges contained in the indictment if the defendants failed to tender the required cooperation or otherwise violated their agreements. The government reserved this right to proceed upon breach under the terms of paragraph nine of the plea agreements. The ability to proceed according to that provision, however, is conditioned on two events — (1) the indictment had to remain viable *and* (2) the defendants had to renege on their promise.

[19]For this reason, the dissent is incorrect in its reliance on paragraph one. The agreements begin with paragraph one, but they do not end there. And, while the agreements state that the indictment must be dismissed upon sentencing, they do not state that the indictment is to be dismissed *only* upon sentencing and not other circumstances. As we show below, the agreements contain an additional promise on the part of the government not to prosecute the defendants if they cooperate.

The government's reading of paragraph two — that "other non-violent offenses now known to the government" refers only to "other crimes known to the government but not charged" is not tenable. There would have been little reason for the defendants to agree to plead guilty to the crime of importation and cooperate with the government in exchange for an agreement not to prosecute them on other charges if their immunity for "other non-violent offenses" did not include the charges that were to be dismissed. Further, if the government had intended the "other non-violent offenses" phrase to refer only to uncharged offenses, we would expect to find the phrase qualified accordingly — e.g., by the addition of "but not charged." Such language is absent.[20]

The agreement to dismiss the conspiracy charges upon sentencing does not take care of the problem of assuring against prosecution for the dismissed charges because, under paragraph one standing alone, the government could proceed with such prosecution in lieu of going forward with the charges in the information — which would then never reach the sentencing stage. Alternatively, the government could move to dismiss the indictment *without* prejudice, an action wholly consistent with paragraph one, and then reindict the defendants on the conspiracy charges, regardless of whether they had tendered the required cooperation. These perverse results would be possible because, as the government and the dissent read paragraph two, the defendants could have been prosecuted on the conspiracy charges, even if they fully cooperated.

---

[20]The dissent contends that the government's suggested reading of paragraph two is confirmed by the provision in paragraph nine that states that if the defendants do not fulfill all their obligations under the agreement that they shall "be fully subject to criminal prosecution for other crimes, and for the counts which were to be dismissed." Contrary to the dissent's assertion, this phrase does not speak to the "language used in paragraph two," dissenting op. at 3832, because the words used in paragraph nine — "other crimes" — is entirely distinct from "other non-violent offenses now known to the government or which [they] reveal[ ] to federal authorities." Also, the context in which the two phrases are used is quite different.

**[16]** We conclude that the phrase "other non-violent offenses now known to the government" should be read to refer to all non-violent offenses known to the government to which the defendants did not plead guilty, including the conspiracy charges contained in the indictment.[21]

The United States argues that this result deprives the government of the benefit of its bargain, as it was "bargaining for a conviction." But that account leaves out half the story: The government was bargaining for a *particular* conviction — a conviction on the crime of importation, not on the conspiracy charges contained in the indictment. Our decision in *Cabaccang* no doubt resulted in a windfall for the defendants, who, by virtue of a favorable change in the law, will avoid the incarceration they expected to serve. That change, however, does not permit the government to escape its obligation under the plea agreements not to prosecute the defendants for "any other non-violent offenses now known to the government" as long as they fulfilled their cooperation obligation. This they did: It is undisputed that both defendants provided cooperation to the government in its investigation, as required by the terms of the agreement. Once the defendants upheld their end of the agreement, the government did obtain bargained-for consideration and was therefore precluded from prosecuting the defendants on the conspiracy charges contained in the indictment. The language of the plea agreements so recognizes, by providing in paragraph two that the agreement not to prosecute is "[i]n return for [the defendants'] cooperation."

Even if considerations of fairness to the government were pertinent — which they are not, as the terms of the agree-

---

[21]Although we do not find the reading of paragraph two proffered by the government and the dissent persuasive, to the extent that "other non-violent offenses" is viewed as capable of different interpretations, such a characterization cuts in favor of the defendants. The government, as the drafter of the defendants' agreements, bears the responsibility for any lack of clarity and, as a result, we would be forced to construe the ambiguity in the defendants' favor. *Franco-Lopez*, 312 F.3d at 989.

ments favor the defendants' position — we are convinced that allowing the government to proceed on the conspiracy offenses would be inequitable. If such a prosecution were to proceed, the government could, under the last sentence of paragraph nine of the agreements, use the defendants' bargained-for cooperation to help convict them of separate crimes.[22]

By their very nature, "importation" offenses and "distribution" offenses require entirely different factual bases to justify a conviction. Charging the offense of conspiracy adds other factual elements as well. *See United States v. Jackson*, 167 F.3d 1280, 1285 (9th Cir. 1999) ("The evidence necessary to prove conspiracy is clearly distinct from that needed to sustain a conviction for the underlying substantive offense."). The defendants agreed to plead guilty to a crime that required the government to prove only that they "imported" illegal narcotics; that is, that the defendants flew drugs into the country. *See* 9TH CIR. CRIM. JURY INSTR. § 9.27 (2000). To prove the "conspiracy to distribute" offense, in contrast, the government would be required to prove that the defendants participated in a scheme to distribute methamphetamine. *Id.* §§ 8.16, 9.15. Further, to sustain a conviction on Count VIII of the indictment, the government would have to prove that Dao conspired with others to engage in money laundering in violation of 18 U.S.C. § 1956(a)(1)(B)(i).

The relevance of these evidentiary distinctions is that any effort on the part of the government to proceed with the conspiracy charges would involve the use of the defendants' own

---

[22]There is the problem as well that the defendants' plea agreements only acknowledged importation of 100 grams of methamphetamine hydrochloride, while the indictment charges distribution of over 500 grams. At oral argument the government represented that it would only prosecute the defendants for conspiracy to distribute 100 grams. The government's concession that the limited factual basis in the plea agreements has continuing force is not, however, responsive to the defendants' contention that they may not be prosecuted at all under the agreements.

cooperation against them. As part of their plea agreements, the defendants agreed to provide substantial cooperation to the government in the investigation of a drug smuggling and money laundering conspiracy operating in the District of Guam. And cooperate they did. The conspiracy offenses by definition involved a confederation with other individuals. By providing information concerning the actions of others involved in the same conspiracies, the defendants necessarily provided the government with a roadmap to their own liability on those offenses — crimes for which, under the terms of their plea agreement, they did not expect to be prosecuted. With the defendants' having tendered this cooperation, the law does not permit the government to renege on its deal, as the defendants have "paid in a coin that the [United States] cannot refund." *Brown*, 337 F.3d at 1161.

When confronted with a situation such as this, where the government is pursuing a course of action that is tantamount to a breach, the defendants are entitled to one of two available remedies — either rescission of the agreement or specific performance. *Id.* We need not pause long in consideration of this question, however, as tossing the defendants' plea agreements aside would lead to an inequitable result. The defendants have not only given up their right to remain silent, they have already tendered their best bargaining chip. This court cannot fashion relief to undo the current state of affairs. As the government's request that we return the parties to the status quo ante is impossible, the only permissible remedy is to order specific performance of the plea agreements — that is, of the government's promise not to prosecute for the conspiracy charges if the defendants fulfill their promise to cooperate. *Id.*

[17] In sum, our reading of relevant provisions of the plea agreements lead us to conclude that the conspiracy prosecutions cannot go forward. Paragraph one does not permit the government to go forward with prosecutions on the conspiracy charges simply because sentencing on the importation charges did not occur; rather, it specifies one circumstance,

but not the only one, precluding additional prosecution. Paragraph two bars additional prosecutions once the defendants' cooperation promise is fulfilled. Accordingly, the blanket command in paragraph two remains enforceable even if the indictment is not dismissed pursuant to paragraph one.[23] Given that the Transfiguracion and Dao both fulfilled their end of the bargain by cooperating with the government, they cannot be prosecuted "for any other non-violent offenses now known to the government." As a result, the prosecution of the conspiracy charges cannot continue.

As a means of effectuating the promise that the conspiracy prosecutions could not go forward, the district court concluded that dismissal of the indictment against Transfiguracion and Dao was the proper remedy. Although this dismissal was not specified as "with prejudice," it is evident that the district court was contemplating a dismissal on the merits, which "precludes a trial on a reindictment of the same charge." *United States v. Cejas*, 817 F.2d 595, 600 (9th Cir. 1987). In *Cejas*, we held that a district court's decision to dismiss an indictment on the grounds that the charges contained therein were barred by double jeopardy was a dismissal on the merits, and reindictment was therefore precluded. *Id.* We view the district court's decision to dismiss the indictment against Transfiguracion and Dao, premised on the conclusion that prosecution on those charges were barred by the terms of their plea agreements, as sufficiently similar to the dismissal in *Cejas* to be considered a dismissal on the merits, thereby precluding further prosecution.[24]

---

[23]The dissent contends that the "principal object" of the agreements was to obtain criminal convictions. Dissenting op. at 3830. If that were true, however, paragraph two, providing for non-prosecution "in return for . . . cooperation," would be entirely superfluous. The agreement contemplated another benefit for the government in addition to the convictions: cooperation in the investigation and prosecution of the co-conspirators.

[24]Even if the dismissal orders of the district court could be considered unclear as to the possibility of future prosecution on the charges contained in the indictment, we would exercise our power as an appellate court to "clarify the dismissal to reflect that it is with prejudice." *United States v. Brown*, 425 F.3d 681, 682 (9th Cir. 2005) (per curiam).

## IV.

The plea agreements insulate Transfiguracion and Dao from prosecution on the charges contained in the indictment. The bargain the government struck bars the prosecution of the defendants for the conspiracy offenses. The district court's interpretation of the plea agreements was correct and, therefore, its decision to dismiss the indictment against Transfiguracion and Dao, thereby precluding prosecution on the charges contained therein, was not an abuse of discretion.

**AFFIRMED.**

---

GIBSON, Circuit Judge, dissenting:

In *United States v. Barron*, 172 F.3d 1153 (9th Cir. 1999) (en banc), this Court held the government to the terms of a plea-bargain that failed to provide for the event that the conduct pleaded to would later turn out to be legal. The government learned its lesson and drafted a plea agreement providing that in such an event, the government could prosecute the defendant on the remaining counts. Transfiguracion and Dao signed on to such an agreement, but today the Court has moved the goal-post and the government loses once again.

The Court asserts that the cooperation clause[1] is the "meat and potatoes of the plea agreement," *supra* at 3824, and holds that once the defendant has cooperated, the punishment aspect of the agreement can go by the board. My study of the plea agreement leads me to believe that its principal object was to obtain a conviction for participation in a drug ring, and the defendant's cooperation did not extinguish the government's right to keep trying for a conviction and sentence.

---

[1] I, too, will discuss only Dao's agreement, since the two are identical in material respects.

duct indicted but not pleaded to, regardless of whether the
government obtained a conviction and sentence for the impor-
tation count pleaded to. A far more sensible reading of the
cooperation clause is that "other non-violent offenses" refers
to conduct "other" than that in the indictment, rather than to
indicted conduct that has already been specifically dealt with
in paragraph one.

This reading is confirmed elsewhere in the agreement. In
paragraph nine, the agreement discusses the consequences if
Dao commits one of several kinds of missteps. It says that "in
addition to standing guilty of the matters to which she has
pled pursuant to this agreement, [Dao] shall also be fully sub-
ject to criminal prosecution for other crimes, and for the
counts which were to be dismissed." Thus, the agreement dis-
tinguishes between "other" crimes ("other" being the same
language used in paragraph two), and the indicted counts
which the government agreed in paragraph one to dismiss
upon sentencing.

Moreover, paragraph nine further refutes the idea that the
cooperation agreement stands alone so that cooperation
releases Dao without regard to the rest of the agreement. Para-
graph nine states that if Dao engages in criminal conduct after
the entry of the plea agreement but before sentencing, she will
lose all the benefit of the plea agreement (presumably includ-
ing the benefits conferred in paragraph two) notwithstanding
her cooperation. Cooperation was not intended to trump the
government's other objectives in entering the plea agreement.

Finally, and most importantly, the government tried to pro-
tect itself in the event that it failed to obtain a conviction on
the pleaded count, which is what has happened here. Para-
graph eleven provides: "If defendant's guilty plea is rejected,
withdrawn, vacated, or reversed at any time, the United States
will be free to prosecute defendant for all charges of which it
then has knowledge, and any charges that have been dis-
missed will be automatically reinstated . . . ." The Court today

This case is about the government's obligation to dismiss the counts not pleaded to. That obligation is set forth in paragraph one, in which Dao agrees to plead guilty to importation of methamphetamine. The second sentence of the paragraph contains the agreement to dismiss Counts I, VI, and VIII of the indictment *"upon sentencing."* (emphasis added). This language shows that obtaining a conviction and punishment is the government's primary object in agreeing to dismiss the other counts. The government's obligation to dismiss does not ripen until the defendant is meted out her punishment. Since that will never happen in this case, the government is not obliged to dismiss. However, the Court reads this important language out of the agreement, stating that "upon sentencing" refers only to the "timetable" of sentencing, *supra* at 3823. A timetable that specifies "never" negates the promise itself.

The second paragraph contains the cooperation agreement, in which Dao agrees to cooperate in investigation of the drug ring and to testify in proceedings against her co-conspirators. In return, the United States agrees to make her cooperation known to the district court before sentencing. This quid pro quo shows that the cooperation clause is integrally connected to the principal object of the agreement—punishment of Dao.

However, the Court today reads the second part of the cooperation agreement as somehow able to stand alone from the rest of the agreement. In this part of the cooperation paragraph, the government reserves the right to prosecute Dao for any non-violent crime of which "she does not fully advise the United States, or for any material omissions in this regard," but it also agrees "not to prosecute defendant in the District of Guam or the Northern Mariana Islands for any other non-violent offenses now known to the government or which she reveals to federal authorities." The Court today reads the words "other non-violent offenses" as pertaining to the already-indicted conduct, which puts those words at war with paragraph one. Such a reading would mean that if Dao cooperated, the government could not prosecute her for the con-

duct indicted but not pleaded to, regardless of whether the government obtained a conviction and sentence for the importation count pleaded to. A far more sensible reading of the cooperation clause is that "other non-violent offenses" refers to conduct "other" than that in the indictment, rather than to indicted conduct that has already been specifically dealt with in paragraph one.

This reading is confirmed elsewhere in the agreement. In paragraph nine, the agreement discusses the consequences if Dao commits one of several kinds of missteps. It says that "in addition to standing guilty of the matters to which she has pled pursuant to this agreement, [Dao] shall also be fully subject to criminal prosecution for other crimes, and for the counts which were to be dismissed." Thus, the agreement distinguishes between "other" crimes ("other" being the same language used in paragraph two), and the indicted counts which the government agreed in paragraph one to dismiss upon sentencing.

Moreover, paragraph nine further refutes the idea that the cooperation agreement stands alone so that cooperation releases Dao without regard to the rest of the agreement. Paragraph nine states that if Dao engages in criminal conduct after the entry of the plea agreement but before sentencing, she will lose all the benefit of the plea agreement (presumably including the benefits conferred in paragraph two) notwithstanding her cooperation. Cooperation was not intended to trump the government's other objectives in entering the plea agreement.

Finally, and most importantly, the government tried to protect itself in the event that it failed to obtain a conviction on the pleaded count, which is what has happened here. Paragraph eleven provides: "If defendant's guilty plea is rejected, withdrawn, vacated, or reversed at any time, the United States will be free to prosecute defendant for all charges of which it then has knowledge, and any charges that have been dismissed will be automatically reinstated . . . ." The Court today

holds that the guilty plea was not rejected or vacated, but what else was the dismissal of the importation count to which Dao had pleaded?

By focusing on the continuing validity of the plea agreement, the Court avoids recognizing that the plea itself has been rejected. The Court relies on *Barron*, a habeas case, to say that Dao has not repudiated her plea agreement. *Supra* at 3818. That is not the point. *Barron* did hold that engaging in a collateral attack on a conviction obtained pursuant to a plea agreement did not amount to a repudiation of the *plea agreement*, which meant that the plea agreement was still enforceable. That holding is irrelevant here, since the government is trying to enforce the plea agreement in this case.[2] The plea agreement before us says that the deal to dismiss remaining counts is off if the *plea*, not the *plea agreement*, is rejected or vacated. Here, the district court correctly refused to convict on the plea, so the plea was either rejected or vacated. The plea agreement anticipated such a situation and the parties agreed that if it happened, Dao could be prosecuted on the remaining counts.

The Court stretches *Barron* further than it will go, by contending that *Barron* holds that the guilty plea was not set aside when the conviction was vacated in response to Barron's habeas petition. Both *Barron* and *United States v. Sandoval-Lopez*, 122 F.3d 797 (9th Cir. 1997), considered whether a defendant's habeas petition to vacate a conviction breached a plea agreement, not whether vacatur of the conviction amounted to vacatur or rejection of the guilty plea.[3] Nei-

---

[2]The government's attempt to enforce paragraph nine of the agreement is, of course, an alternative argument in case the government lost its bid to rescind the agreement, which I agree it must.

[3]Language in the Court's opinion that seems to say the plea is "in force" even though the district court has rejected it was taken out of context from *Barron*: "[T]he guilty plea to criminal acts can remain in force even as the sentence imposed upon an innocent act is set aside." *Supra* at 3818 (quoting *Barron*, 172 F.3d at 1158). *Barron* was making the point that all the

ther *Barron* nor *Sandoval-Lopez* reached the latter question because the plea agreements in those cases did not give the government a remedy in the event of vacatur or rejection of the plea or conviction. *See Barron*, 172 F.3d at 1161; *Sandoval-Lopez*, 122 F.3d at 802. The agreement in this case does.

The plain language of the plea agreement permits the government to prosecute Dao and Transfiguracion on the counts not pleaded to. *Contra proferentem* does not simply mean, "The government loses." I therefore must respectfully dissent.

---

counts of conviction based on a guilty plea need not be vacated simply because one of the counts of conviction has to be set aside. Barron had pleaded to three counts, one of which was set aside on habeas, but he did not want to disturb the disposition of the other two counts because he would have received a longer sentence the second time around. Here, the plea to the only count of conviction was rejected. No guilty plea was left "in force."